UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re. <br><br> JAMES PATRICK GONZALES, <br><br>    Plaintiff. <br> _____ / | No. C 07-2373 MHP (pr) <br> No. C 07-3166 MHP (pr) <br> No. C 07-3289 MHP (pr) <br> No. C 07-3517 MHP (pr) <br> No. C 07-3691 MHP (pr) <br> No. C 07-3978 MHP (pr) <br> No. C 07-4019 MHP (pr) <br> No. C 07-5427 MHP (pr) |

**ORDER OF DISMISSAL**

  On January 22, 2008, the court ordered plaintiff, James Patrick Gonzales, to show cause why pauper status should not be denied and these eight actions should not be dismissed under 28 U.S.C. § 1915(g), which provides that a prisoner may not bring a civil action in forma pauperis "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."  The order identified four prior dismissals that appeared to count under § 1915(g), and explained that Gonzales could show one or more dismissals did not count under § 1915(g), or he could pay the filing fee, or he could show that he came within the imminent danger exception to avoid dismissal.  The court noted that Gonzales had included in several complaints allegations that he was in imminent danger and said that it would consider those statements in addition to any written response to the OSC.

Gonzales filed a response to the OSC. He did not show that any of the prior dismissals could not be counted as dismissals under § 1915(g). The court now finds that the four prior dismissals identified in the order to show cause count as dismissals for purposes of § 1915(g). Gonzales did not opt to pay the filing fee and did not dispute that he was the same person as the plaintiff in each of the prior dismissals. Gonzales' only argument against dismissal was that he fit within the imminent danger exception, which allows a prisoner-plaintiff who otherwise would be not be allowed to proceed as a pauper to proceed with his complaint if he "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To fit within that exception, Gonzales had to make plausible allegations that he faced imminent danger of serious physical injury at the time of filing each complaint. See Andrews v. Cervantes, 493 F.3d 1047, 1055 (9th Cir. 2007). Gonzales contended that prison officials had been trying to murder him since 1995. The details of that alleged campaign to harm/kill him were such that they made the assertion of imminent danger simply not plausible.

Gonzales stated in his OSC response that problems started in 1996 when he was exposed to radiation, a claim this court dismissed long ago in Gonzales v. U.S.A., No. C 98-3060 MHP, but that he continues to insist "really did happen" and is "the tip of a humgeous [sic] deep 'ice berg'" that has caused him to endure immeasurable suffering. OSC response, p.2. The court described Gonzales' allegations about his radiation claim:

> Plaintiff's complaint alleges, among other things, the following story. Plaintiff has a special genetic structure he inherited as the son of a man who participated in a genetic experiment while in the U.S. Army. As a result of his special genetic structure, he has not been killed despite having several encounters (including two car accidents, a throat slashing and food poisonings) that would have resulted in death for a normal person. The government is attempting to "eliminate him" because it does not want other persons or foreign governments to learn about plaintiff''s special genetic structure. Word has leaked out to the community about plaintiff's special genetic structure and people have tried to get plaintiff to sire offspring so they could obtain similarly powered infants. <u>Plaintiff was irradiated in 1996 by radioactive smoke which caused his body to emit a fluorescent green glow.</u> "As soon as the radiation settled in his bones, government scientists were able to observe plaintiff on a computer anywhere in the world via a satellite from outer space." (Complaint, p. 21.) The government has been monitoring plaintiff throughout his life, and has disrupted his relationships with other people. Due to the government's depiction of plaintiff as a "lunatic," the Watchtower Bible and Tract Society has abandoned him. (<u>Id.</u> at 22.) Some of the alleged misdeeds occurred in this judicial district. Plaintiff seeks

damages from the government and a court order requiring the Watchtower Bible and Tract Society to provide him with spiritual guidance.

Gonzales v. USA, No. C 98-3060 MHP, Order of Dismissal, pp. 1-2 (emphasis added). The 1998 allegations are relevant insofar as Gonzales relied on them to explain the contours of the alleged imminent danger he faced in 2007. That is, he was still relying on the radiation allegations as the foundation for his story that he has been and was being targeted for harm.

Gonzales made utterly incredible allegations of being poisoned. Gonzales has now alleged that people were trying to poison him by slipping bleach and medications into his food and that the poisonings happened in at least three different prisons (Tehachapi, Mule Creek, and Salinas Valley) and had been going on for more than a decade, yet he remained alive. One particularly striking example of the unbelievable was Gonzales' statement, "I allege that every correctional officer that has ever served me a tray in ad-seg D8, has hurt me, assaulted me, injured my body by serving me poisoned food or medicated food, and it is getting worse. Every meal I get has something in it that one of these D8 officers puts in my food to make me sick." Motion for Summary Judgment/TRO in Case No. C 07-2373 MHP, p. 2.

Gonzales also alleged that he has been assaulted by other inmates several times during his lengthy tenure in the prison system. Apparently he was stabbed in 1995, but that stabbing did not show imminent danger at the time these actions were filed in 2007. He also alleged that in 2007 he was taunted by being called a child molester by other inmates and a guard, but his complaint in C 07-3289 indicated that inmates (rather than correctional staff) started the name-calling and that it happened several months before the first of these actions was filed. As with his contentions of being poisoned, the details of the campaign to kill him showed his allegations to be no less than implausible. He offered a convoluted and delusional tale in Case No. C 07-2373 MHP to explain why other prisoners targeted him: Gonzales stated that his father was killed by his stepmother (who brought home a syringe contaminated with hepatitis that his father used for an insulin injection), then word of that got around the inmate population, then Richard Allen Davis killed Polly Klaas to convey a

3

1  message because Klaas resembled the wife of Gonzales' father's friend, and that set off the
2  chain of events that led to Gonzales being blamed for the Three Strikes law and being
3  targeted for assault. <u>See</u> Motion to consolidate, pp. 1-3 in Case No. C. 07-2373 MHP
4  (docket # 8). Rather than making a plausible case of an inmate in imminent danger,
5  Gonzales' filings showed an inmate acting under a delusion.

6      Finally, one might wonder why an inmate would invent a story of a campaign to harm
7  him. Gonzales provided the answer in his OSC response, as he made it abundantly clear that
8  his goal was to be transferred out of the California prison system into federal custody or
9  another state's custody, and he had even gone so far as mailing bomb threats from prison and
10 jail in 1998 to try to get such a transfer, <u>see</u> OSC response, pp. 3-5. His blunt explanation of
11 his goal leads one to question whether the allegations of a campaign to harm him might be
12 part of a renewed effort to reach that goal.

13     The court concludes that Gonzales did not fit within the exception for an inmate under
14 imminent danger of serious physical injury at the time he filed any of the complaints.
15 Section 1915(g) applies and bars pauper status for Gonzales in these actions.

16     For the foregoing reasons, Gonzales' <u>in forma pauperis</u> application in each action is
17 DENIED and each action is DISMISSED. The dismissal is without prejudice to Gonzales
18 asserting his claims in an action for which he pays the full filing fee at the time he files his
19 complaint. All other pending motions are dismissed as moot in light of the dismissal of these
20 actions. The clerk shall close the file.

21     IT IS SO ORDERED.
22 Dated: March 4, 2008

                                                              _____
                                                               Marilyn Hall Patel
                                                               United States District Judge